This appeal is prosecuted to reverse a judgment of the district court of Delaware county admitting to probate an instrument purporting to be the last will and testament of Jennie Chopper, deceased.
Lizzie Chu-wa-looky petitioned the county court of Delaware county to have an instrument bearing date May 5, 1922, admitted to probate as the last will and testament of Jennie Chopper, deceased.
It appears that Jennie Chopper left no surviving husband, nor children, father, mother, brother, or sisters, and, by the terms of the instrument propounded, devised practically all of her property to a surviving nephew, Dick Vann, leaving to each of her other nephews and nieces a nominal amount only.
J. A. West was nominated and appointed as executor of said will. Upon a hearing in the county court of Delaware county, judgment was entered admitting the will to probate. An appeal was perfected to the district court of Delaware county, where after hearing and trial de novo, judgment was rendered affirming the judgment of the county court, to reverse which the contestants, Henry Tincup, Laura Tincup, Florence Tincup, Edmond Tincup, Austin Tincup, William W. Tincup, Mary Tincup, May Tincup, and James Tincup have instituted proceedings in error in this court. Parties will be hereinafter referred to as proponents and contestants as they were in the trial court.
The contestants appeared in the county court and in the district court of Delaware county and contested the probate of the instrument propounded as the last will and testament of Jennie Chopper, deceased, upon grounds: (a) That the same had not been properly executed, published and attested; (b) that the testatrix was unduly influenced to make such will; and (c) was not mentally competent.
A demurrer was interposed by the contestants to the evidence of the proponents of the will at the conclusion of their evidence, heard and overruled, and exceptions allowed.
It is first contended by contestants that the trial court erred in finding that the will had been executed and attested in substantial compliance with the statute law of this state. The evidence discloses that the testatrix, Jennie Chopper, was a full-blood *Page 26 
Cherokee Indian woman whose husband had died several years prior to her death; that, for a number of years after the death of her husband, Joe Fox lived on her allotment with her or near her and looked after her business affairs; that about five years prior to the execution of the will in controversy, Joe Fox and wife left the testatrix and her nephew, Dick Vann, came and lived with her and continued to look after her business affairs.
Jennie Chopper was an uneducated full-blood Cherokee Indian, and was unable to speak or understand the English language.
At the time of the execution of the will in controversy Jennie Chopper was, and for a number of years prior thereto had been, almost, if not totally, blind. It appears that the chief beneficiary under the will, Dick Vann, died subsequent to the execution of the will and prior to the time it was propounded for probate and that John Vann, his son, succeeded to his rights, as the principal beneficiary under said will.
There were three subscribing witnesses to the will. Only two of these witnesses, Dick Grass and Peter Soldier, spoke and understood the Cherokee language. The evidence discloses that the will was prepared by a United States Probate Attorney at his office in Vinita at the request of Joe Vann, who claimed to be the agent of the testatrix.
We have examined the evidence in the case very carefully and we cannot say that the proponents of the will have failed to establish by a preponderance of the evidence that the same was executed, published and attested as required by the laws of the state of Oklahoma.
The weight of the evidence is to the effect that the subscribing witnesses knew that the instrument they were signing was a will; that it was signed in the presence of the subscribing witnesses and formally declared by the testatrix to the attesting witnesses that the instrument was her will, at the time it was signed by her.
Two of the subscribing witnesses, both of whom spoke and understood both the Cherokee and the English languages, testified that Dick Grass, one of these witnesses, read the will over to the testatrix in the Cherokee language, and that she thereupon signed the will by her thumb mark in the presence of the subscribing witnesses, and thereupon the subscribing witnesses signed their names to the attesting clause in her presence, and in the presence of each other.
We think this evidence not only establishes an express declaration by the testatrix that the instrument propounded was her will, but that proof of due execution, publication, and attestation could be implied from the action and conduct of the testatrix within the rule established by the authorities.
A substantial compliance with the statute, as we understand it, is all that is required. 40 Cyc. 1117.
It is true that the evidence may leave some question as to whether the request for the signatures of the subscribing witnesses was made by testatrix herself or by John Vann, but the request was made in the presence and hearing of the testatrix for whom Vann was acting as agent, and this has been held to be sufficient. Rogers v. Diamond, 13 Ark. 477.
It was also true that the testimony of Jess Grass was considerably shaken on cross-examination but it must be remembered that the testatrix, the proponents, and contestants and two of the subscribing witnesses were all Cherokee Indians. It is not unusual for witnesses of this kind to display a timidity peculiar to their race when testifying in a court proceeding and especially a proceeding of the nature here involved, where the issues joined were highly technical. However, the trial court having a superior opportunity for knowing the witnesses and observing their demeanor on the stand has passed upon the weight of the evidence and credibility of the witnesses, and there being no showing of abuse of discretion by the trial court in this particular, his decision must be sustained on appeal.
We can find no support in the evidence for the contention of contestants that the will in controversy was obtained by duress, menace, fraud, or undue influence, or that the testatrix was without testamentary capacity.
There is no proof in the record that Dick Vann, the principal beneficiary under the will, was present when the will was drawn or executed, and there is no proof, so far as our examination of the record discloses, that any undue influence such as would destroy the free agency of the testatrix was exerted by the beneficiary at the time the instrument was made.
The fact that the testatrix may have been influenced by the beneficiary in the ordinary affairs of life, or the fact that she may have been in confidential relation with him and *Page 27 
with his heirs at the time of its execution, is not sufficient to invalidate the instrument. In re Estate of George S. Hart,106 Okla. 180, 233 P. 227.
There is nothing in the evidence that lends support to the theory that the testatrix was unable to understand the nature and the consequence of her act in making a testamentary disposition of her property, or to decide correctly upon the objects of her bounty.
We think the judgment of the trial court was supported by the law and evidence in the case and that the trial court committed no error in overruling the demurrer of contestants to the evidence of proponents, and the judgment of the trial court in finding that the will was executed and attested in substantial compliance with the statute law of this state must therefore be sustained.
The judgment of the trial court is therefore affirmed.
By the Court: It is so ordered.